UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                     :

PATTY RATERMANN,                                :
                                                     :
                       Plaintiff,            :
                                                     :          22-CV-325 (JMF)
          -v-                           :
                                                     :         <u>OPINION AND ORDER</u>
PIERRE FABRE USA, INC., et al.,            :
                                                     :
                       Defendants.      :
                                                     :
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

In 2020, Plaintiff Patty Ratermann signed a license with Defendant QuickFrame, Inc. ("QuickFrame") allowing QuickFrame to use her likeness on Instagram. Although the license was limited to Instagram, Ratermann alleges that she later discovered her likeness being used to promote the products of Defendant Pierre Fabre USA, Inc. ("Pierre Fabre"), which does business as Avène, on the Avène website; on the websites of Defendants Amazon, Inc. ("Amazon"), Walmart, Inc. ("Walmart"), and Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta"); and in a physical store owned and operated by Defendant Walgreen Co. ("Walgreens"). Following that discovery, she filed this lawsuit, bringing claims against one or more Defendants for, among other things, violation of her right to "privacy" and/or "publicity" under Sections 50 and 51 of the New York Civil Rights Law, N.Y. Civ. Rights Law §§ 50-51; violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*; unfair competition; breach of contract; and fraud.

Now pending are two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, one filed jointly by Pierre Fabre, Amazon, Walmart, Ulta, and Walgreens,

and one filed by QuickFrame.[1]  Defendants raise various arguments, one of which warrants closer analysis because it appears to raise a question of first impression: whether Amazon, Walmart, and Ulta are immune from suit under New York Civil Rights Law Sections 50 and 51 pursuant to Section 230 of the Communications Decency Act ("Section 230"), 47 U.S.C. § 230, or whether an exception to Section 230 immunity, for intellectual property claims, applies.  For the reasons that follow, the Court concludes that Amazon, Walmart, and Ulta are immune under Section 230 and, because the gravamen of a claim under Sections 50 and 51 is a violation of the right to privacy, the intellectual property exception does not apply.  For that reason and the others discussed below, the Court GRANTS the motions to dismiss with respect to Ratermann's claims against Defendants Amazon, Walmart, Ulta, and Walgreens, and GRANTS in part and DENIES in part the motions with respect to her claims against Defendants Pierre Fabre and QuickFrame.

## BACKGROUND

The following facts, taken from the Third Amended Complaint (the "Complaint"), ECF No. 69 ("TAC"), and documents it incorporates by reference, are construed in the light most favorable to Ratermann.  *See, e.g., Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013).

Ratermann is a model who has worked with various companies in the fashion industry, including Burberry, Garnier, Uniqlo, and Estee Lauder.  TAC ¶ 14.  On or around July 9, 2020, she signed a single-use license with QuickFrame giving QuickFrame the right to use her likeness on Instagram, and "only" Instagram.  *Id.* ¶¶ 15, 21; ECF No. 69-1.  In or about August 2021,

---

[1]     In its notice of motion, QuickFrame cites Rule 12(b)(2) as well.  ECF No. 79.  But QuickFrame makes no Rule 12(b)(2) arguments in its memorandum of law.

however, Ratermann discovered that her likeness was also being used to advertise Pierre Fabre's Avène products on the Avène website; on the websites of retailers Amazon, Walmart, and Ulta; and "in physical advertisements in stores owned and operated by" Walgreens.  TAC ¶¶ 16-17, 18, 20, 23; *see also id.* at 14-21.  Ratermann never gave consent for her likeness to be used for these purposes.  *Id.* ¶¶ 24-25.  Thus, she alleges, these advertisements exceeded the scope of the license she had granted QuickFrame.  *Id.* ¶ 21.

Ratermann filed this lawsuit on January 12, 2022.  *See* ECF No. 1.  Thereafter, she amended her complaint three times.  *See* ECF Nos. 9, 17, 69.  Pierre Fabre, Amazon, Walmart, Ulta, and Walgreens filed a joint motion to dismiss, ECF No. 74; Walgreens filed a supplemental memorandum, ECF No. 78; and QuickFrame filed a separate motion to dismiss, ECF No. 79.  After Ratermann filed her oppositions, she agreed to drop certain of her claims.  ECF No. 84.  The claims that remain are for violation of New York Civil Rights Law Sections 50 and 51 (against all Defendants); violation of Section 43(a) of the Lanham Act (against Pierre Fabre); common-law unfair competition (against Pierre Fabre); breach of contract (against QuickFrame); and fraud (against QuickFrame).  *See* ECF No. 90.

## LEGAL STANDARDS

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008).  A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.* at 570.

## DISCUSSION

Defendants advance various arguments for dismissal of Ratermann's claims.  The Court will discuss each argument in turn, beginning with the arguments that apply to all Defendants and then turning to the arguments made by Pierre Fabre or QuickFrame alone.

## A.  Impermissible Group Pleading (All Defendants)

First, all Defendants argue that Ratermann's Complaint must be dismissed in its entirety because it fails to comply with Rule 8 of the Federal Rules of Civil Procedure, ECF No. 75 ("Joint Defs.' Mem."), at 7-8; ECF No. 80 ("QuickFrame Mem."), at 6-7, which mandates a short and plain statement showing that the pleader is entitled to relief.  A complaint "satisfies the requirements of Rule 8(a) [when] it gives [each defendant] fair notice of the basis for [the plaintiff's] claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see also, e.g.*, *Medina v. Bauer*, No. 02-CV-8837 (DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (Chin, J.) (noting that, under Rule 8, a complaint must, "at a minimum, . . . give *each defendant* fair notice of what the plaintiff's claim is and the ground upon which it rests" (emphasis added) (internal quotation marks omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *25 (S.D.N.Y. Mar. 26, 2015) ("To state a claim against *each* individually named defendant, Plaintiff must include allegations *as to that* defendant." (emphases added)).  More specifically, to survive scrutiny under Rule 8, a complaint must

disclose sufficient information to permit *each* defendant "to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Ricciuti v. N.Y.C. Transit Auth*., 941 F.2d 119, 123 (2d Cir. 1991).

Measured against these standards, Ratermann's Complaint does have some issues.  The Complaint primarily asserts claims against Defendants jointly.  *See, e.g.*, TAC ¶¶ 16, 24-27.  In doing so, Ratermann alleges that each Defendant was the alter-ego of the other Defendants.  TAC ¶ 13.  But her "alter-ego" allegations are entirely conclusory and plainly fail as a matter of law.  Ratermann provides no factual basis to assert that any Defendant "exercised complete domination" over the others with respect to the transactions at issue, let alone "that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injuries."  *Key Items, Inc. v. Ultima Diamonds, Inc.*, No. 09-CV-3729 (HBP), 2010 WL 3291582, at *8 (S.D.N.Y. Aug. 17, 2010).  Accordingly, Ratermann's alter-ego claims must be and are dismissed for failure to comply with the requirements of Rule 8.

That said, Ratermann's Complaint does not engage in impermissible group pleading, let alone to a degree that would justify wholesale dismissal.  Although the allegations specific to each Defendant are sparse and hardly a model of clarity, they are sufficient for purposes of Rule 8.  First, Ratermann describes (and attaches) her contract with QuickFrame, TAC ¶¶ 15, 21; ECF No. 69-1, which provides QuickFrame notice of the principal factual basis for her claims.  She further alleges that Pierre Fabre promoted its products using her likeness on its website, www.aveneusa.com.  TAC ¶ 23.  She alleges that her likeness was used to advertise Avène products through retailers such as Walmart, Amazon, and Ulta.  *Id.*  And she alleges that Walgreens displayed physical advertisements using her likeness in its stores.  *Id.*  Finally, she attaches to the Complaint images of her likeness allegedly used by each Defendant.  *Id.* Ex. A.

Indeed, there is at least one screenshot attributable to each Defendant (other than QuickFrame). Thus, she provides — though perhaps just barely — a factual basis for distinguishing among Defendants. *See Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 235-37 (S.D.N.Y. 2014). Accordingly, the Court declines to dismiss Ratermann's Complaint in its entirety on Rule 8 grounds.

**B. New York Civil Rights Law Sections 50 and 51 (All Defendants)**

Next, all Defendants move to dismiss Ratermann's claims under New York Civil Rights Law Sections 50 and 51.  TAC ¶¶ 28-32.  Section 50 makes it a misdemeanor for a person or corporation to use "for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person." N.Y. Civil. Rights Law § 50.  Section 51 provides civil remedies, including injunctive relief and damages, for violations of Section 50.  *Id.* § 51.  Amazon, Walmart, and Ulta move to dismiss these claims on the ground that they are immune from liability pursuant to Section 230. Walgreens, Pierre Fabre, and QuickFrame move to dismiss on the ground that Ratermann fails, for one reason or another, to state a plausible claim.  The Court will address each in turn.

**1. Immunity Under Section 230 (Amazon, Walmart, and Ulta)**

Amazon, Walmart, and Ulta argue that they are immune from liability under Sections 50 and 51 pursuant to Section 230 of the Communications Decency Act.  Joint Defs.' Mem. 9-17. Section 230 states, in relevant part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  A defendant is shielded from liability under Section 230 "if the defendant (1) is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would

treat the defendant as the publisher or speaker of that information." *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (cleaned up).  Congress enacted Section 230 in part "to promote the continued development of the Internet and other interactive computer services" and "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation."  47 U.S.C. § 230(b)(1), (2); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 63-64 (2d Cir. 2019).  It hoped to avoid "intrusive government regulation of speech" by limiting the imposition of liability on interactive computer services.  *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).  For these reasons, "Section 230 immunity is broad."  *LeadClick Media*, 838 F.3d at 173.

Here, the three elements of Section 230 are satisfied.  The first element is whether the Defendants are interactive computer services.  Section 230 defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer service, including specifically a service or system that provides access to the Internet."  47 U.S.C. § 230(f)(2).  A website that is a "passive host of third party content" qualifies as an interactive computer service "entitled to immunity for the content of that third party."  *Ricci v. Teamsters Union Loc. 456*, No. 13-CV-7729 (NSR), 2014 WL 11353151, at *2 (S.D.N.Y. Apr. 28, 2014), *aff'd*, 781 F.3d 25 (2d Cir. 2015); *see also Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 473 (E.D.N.Y. 2011) (noting that courts generally understand websites to fall within the definition of "interactive computer service," and citing cases); *accord Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) ("[W]eb site operators . . . are providers of interactive computer services within the meaning of Section 230.").

Walmart, Amazon, and Ulta fall comfortably within that definition.  Indeed, the
Complaint explicitly alleges that Ratermann's likeness was used on "websites selling and
promoting Avène's products through retailers such as Walmart, Amazon, and Ulta."  TAC ¶ 23.
It also attaches screenshots showing Avène's products for sale on Amazon's, Walmart's, and
Ulta's websites.  *Id.* Ex. A, at 15-16, 18, 21.  Put differently, Ratermann alleges that Amazon,
Walmart, and Ulta operate websites and that third-party products, such as Avène, are available
for purchase on their websites.  As other courts have held when faced with similar allegations,
this plainly means that Amazon, Walmart, and Ulta qualify as interactive computer services for
Section 230 purposes.  *See, e.g.*, *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 400 n.5
(S.D.N.Y. 2018) (confirming that Amazon is an interactive computer service in a products-
liability case seeking to hold Amazon liable for content posted by a third-party retailer); *Joseph
v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1105-06 (W.D. Wash. 2014) (holding that Amazon is
an interactive service provider based on the plaintiff's allegations that Amazon "operates a
website that allows consumers to purchase items online"); *Almeida v. Amazon.Com, Inc.*, No. 04-
CV-20004, 2004 WL 4910036, at *4 (S.D. Fla. July 30, 2004) (holding that Amazon is an
"interactive computer service" because "[i]ts primary function is to allow multiple users to a
computer service the ability to purchase various items"), *aff'd* 456 F.3d 1316 (11th Cir. 2006).

The second element is whether Ratermann's claim is based on information provided by a
third party "information content provider."  Section 230 defines "information content provider"
as "any person or entity that is responsible, in whole or in part, for the creation or development
of information provided through the Internet or any other interactive computer service."  47
U.S.C. § 230(f)(3).  An interactive computer service will be immune for content on its platform
under Section 230 unless "it assisted in the development of what made the content unlawful,"

thus becoming an information content provider. *LeadClick Media*, 838 F.3d at 174. Ratermann does not directly contest this point. *See* ECF No. 96 ("Joint Defs.' Reply"), at 3. Nor can she. She accuses Amazon, Walmart, and Ulta of exploiting her "likeness." *See* ECF No. 86 ("Pl.'s Joint Opp'n"), at 7. But that "likeness" was content obtained from other companies, namely Pierre Fabre and QuickFrame. And the Complaint does not allege that Amazon, Walmart, or Ulta "materially contributed to what made the content itself unlawful," becoming "information content providers" as well. *Force*, 934 F.3d at 68 (internal quotation marks omitted); *accord Saveene Corp. v. Remo*, No. 21-CV-399 (LGS), 2021 WL 4806380, at *3 (S.D.N.Y. Oct. 14, 2021) (holding, on a motion to dismiss, that because there were no allegations that the defendant "assisted in the development of or contributed to" the allegedly tortious content, it was not an "information content provider"); *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 12 (S.D.N.Y. 2020) (finding insufficient allegations to support "the plausible inference that Amazon itself created or edited any of the" allegedly tortious content).

The third and final element is whether Ratermann's claim treats Amazon, Walmart, and Ulta as the publisher or speaker of the allegedly illegal information. Section 230 does not define the term "publisher," but the Second Circuit, looking to the term's ordinary meaning, has concluded that it means "one that makes public." *Force*, 934 F.3d at 65 (citing cases). In assessing whether a plaintiff seeks to hold the defendant liable as a protected publisher, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker." *LeadClick Media*, 838 F.3d at 175 (internal quotation marks omitted). In *Force*, asking that question led the Second Circuit to hold that Facebook was immune under Section 230 from claims that sought to impose liability on it for content that users had posted. *See* 934 F.3d at 65-66. Facebook, the court reasoned, was

merely the "forum" for these users, and Facebook's decisions about where and how to display such content were decisions typical of a publisher.  *Id.*

Ratermann argues that she seeks to hold Amazon, Walmart, and Ulta liable not for publishing content they obtained from Pierre Fabre or QuickFrame, but rather for "exploiting her likeness for advertising purposes" and "commercial gain."  Pl.'s Joint Opp'n 6-7 (internal quotation marks omitted).  This is a meaningless distinction.  At bottom, Ratermann's claims are, indisputably, based on these Defendants' allegedly unlawful "dissemination" of her likeness and nothing more.  *Saveene Corp.*, 2021 WL 4806380, at *3; *see also Franklin v. X Gear 101, LLC*, No. 17-CV-6452 (GBD), 2018 WL 3528731, at *19 (S.D.N.Y. July 23, 2018), *adopted*, 2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018) (holding that Section 230 shielded the defendants from liability where the plaintiffs sought to hold them liable for disseminating a third party's advertisements that used an infringing logo); *Calise v. Meta Platforms, Inc.*, No. 21-CV-6186, 2022 WL 1240860, at *3 (N.D. Cal. Apr. 27, 2022) (concluding that Meta was immune from claims regarding deceptive advertisements on its website despite the plaintiffs' allegations that the website encouraged relationships with advertisers and failed to remove fraudulent advertisements).  Indeed, the Complaint alleges that others — Pierre Fabre and QuickFrame — produced the relevant content, namely, Ratermann's likeness; the only duty that Amazon, Walmart, and Ulta are accused of violating is "using" — that is, publishing or disseminating — that content without consent.[2]  Even if Defendants "used" Ratermann's likeness "for advertising purposes," that does not defeat the protection of Section 230.

---

[2]    Nor does Ratermann allege that Amazon, Ulta, and Walmart themselves actively and directly sold Avène products on their websites (or that they themselves uploaded the promotional materials at issue).  To the contrary, the Complaint suggests that they merely served as online marketplaces for third parties to sell the products and that the third parties produced the relevant

Thus, all three elements of Section 230 immunity are satisfied.  The analysis does not end there, however, because the statute includes an exception for "intellectual property" claims.  47 U.S.C. § 230(e)(2); *see also Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 704 (S.D.N.Y. 2009).  Ratermann argues that claims under Sections 50 and 51 are intellectual property claims within the meaning of this provision.  Pl.'s Joint Opp'n 7-10.  Defendants, by contrast, argue that Sections 50 and 51 establish a statutory right to privacy and do not protect intellectual property.  Joint Defs.' Mem. 13 n.8; Joint Defs.' Reply 4-6.  The question appears to be one of first impression.[3]  Defendants have the better of the argument.

Indeed, New York courts have long construed Sections 50 and 51 to provide a statutory right to *privacy*, not property.  *See, e.g.*, *Stephano v. News Grp. Publ'ns, Inc.*, 64 N.Y.2d 174, 182 (1984); *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 451 (S.D.N.Y. 2008) ("Section 51 creates a cause of action for the invasion of the 'right of privacy' granted by section 50."); *Gautier v. Pro-Football, Inc.*, 106 N.Y.S.2d 553, 560 (App. Div. 1951) ("[Section 51] create[es] . . . a limited right of privacy . . . intended for the protection of the personality of an individual against unlawful invasion."), *aff'd*, 304 N.Y. 354 (1952).[4]  To be sure, these courts have observed that the right "parallels" the common law right of publicity, *Stephano*, 64 N.Y.2d at 183, which is indeed "proprietary [in] nature," *Brinkley v. Casablancas*, 438 N.Y.S.2d 1004, 1010 (App. Div.

---

content.  *See, e.g.*, TAC ¶ 23 (". . . selling and promoting Avene's products *through* retailers such as Walmart, Amazon, and Ulta . . . ." (emphasis added)).

[3]     There is a circuit split on whether the "intellectual property" exception to Section 230 even applies to claims under state law.  *Compare Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007) (holding that the exception applies only to claims under federal law), *with Hepp v. Facebook*, 14 F.4th 204, 212 (3d Cir. 2021) (holding that the exception is not limited to federal laws).  The Court need not and does not address that issue here.

[4]     Notably, Ratermann herself styles her Section 50 and 51 claim as a "right of privacy violation."  TAC 1 (cleaned up).

1981); *see also Stephano*, 64 N.Y.2d at 183 (explaining that the common law right of publicity "generally provides remedies for any commercialization of the individual's personality without his consent"). But "the two causes of action" are distinct, *see Brinkley*, 438 N.Y.S.2d at 1010, and New York does not recognize the common law right of publicity, *see Stephano*, 64 N.Y.2d at 183. Instead, "the 'right of publicity' is encompassed under the Civil Rights Law *as an aspect of the right of privacy*." *Id.* (emphasis added); *accord Brinkley*, 438 N.Y.S.2d at 1010-12.

The Appellate Division's foundational decision in *Gautier* is especially instructive. In that case, "a well-known showman and performer who produces and presents acts with trained ponies, dogs and monkeys" brought a claim under Section 51 based on the allegedly unauthorized television broadcast in New York of his performance "between the halves of a professional football game" in Washington, D.C. 106 N.Y.S.2d at 555. The plaintiff prevailed at trial, but the Appellate Division reversed on appeal. Section 51, the court explained, created "a limited right of privacy," which "provided primarily a recovery for injury to the person, not to his property or business. The recovery is grounded on the mental strain and distress, on the humiliation, on the disturbance of the peace of mind suffered by the individual affected." *Id.* at 560. The court acknowledged that "where a cause of action under the Civil Rights statute has been established, damages may include recovery for a so-called 'property' interest inherent and inextricably interwoven in the individual's personality." *Id.* But the court concluded in no uncertain terms that "*it is the injury to the person not to the property which establishes the cause of action. That is the focal point of the statute.*" *Id.* (emphasis added).

These authorities leave no doubt that a claim under Sections 50 and 51 of the New York Civil Right Law sounds in privacy, not intellectual property, and thus does not fall within the intellectual property exception to Section 230. In arguing otherwise, Ratermann asserts that

"there is case law that suggests New York Civil Rights Law §§ 50 and 51 provide a trademark-like intellectual property claim under state law," Pl.'s Joint Opp'n 8, but she conspicuously fails to cite any such cases.  Ratermann does invoke *Rogers v. Grimaldi*, 875 F.2d 994 (2d. Cir 1989), *see* Pl.'s Joint Opp'n 8, but it involved a claim under the Lanham Act and a *common law* right of publicity claim under *Oregon* law, not a Section 50 and 51 claim under New York law, *see* 875 F.2d at 997-1005.  The other cases Ratermann cites are similarly inapposite, as none involved New York law, let alone Sections 50 and 51.  *See Matthews v. Wozencraft*, 15 F.3d 432 (5th Cir. 1994) (Texas misappropriation claim); *Parks v. LaFace Recs.*, 329 F.3d 437 (6th Cir. 2003) (Michigan common law right of publicity claim); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268 (9th Cir. 2013) (California unauthorized appropriation claim); *Kirby v. Sega of Am., Inc.*, 50 Cal. Rptr. 3d 607 (Ct. App. 2006) (same); *No Doubt v. Activision Pub'g, Inc.*, 122 Cal. Rptr. 3d 397 (Ct. App. 2011) (same); *Hart v. Elec. Arts, Inc.*, 717 F.3d 141 (3d Cir. 2013) (New Jersey common law right of publicity claim); *Hepp*, 14 F.4th 204 (Pennsylvania statutory right of publicity claim).[5]

Ratermann also quotes *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562 (1977), for the proposition that "the right of publicity is an individual property right that is 'closely

---

[5]     Of these cases, *Hepp* is the most on point as it too involved the applicability of the "intellectual property" exception to Section 230.  The Third Circuit held, as a matter of first impression, that a Pennsylvania right to publicity claim qualified as an "intellectual property" claim for purposes of the exception.  *See* 14 F.4th at 213.  But the court took pains to emphasize the "narrowness" of its holding, most notably for present purposes stressing that it applied only to Pennsylvania law and that Pennsylvania's law "is limited.  For instance, it provides a right of publicity cause of action only for those whose valuable interest in their likeness 'is developed through the investment of time, effort, and money.'"  *Id.* at 214 (quoting 42 Pa. Cons. Stat. § 8316(e)).  As discussed above, New York courts have construed Sections 50 and 51 differently. *See Gautier*, 106 N.Y.S.2d at 560-61 ("Section 51 . . . was not enacted to fill gaps in our copyright statute . . . or to extend the law relating to unfair competition or to the appropriation of another's business or enterprise.").  If anything, therefore, *Hepp* reinforces the conclusion that claims under Section 50 and 51 are not "intellectual property" claims for Section 230 purposes.

analogous to . . . patent and copyright' because it focuses 'on the right of the individual to reap the reward of his endeavors and [has] little to do with protecting feelings or reputation.'" Pl.'s Joint Opp'n 9-10 (quoting 433 U.S. at 573) (omission and alteration in original). But in doing so, she takes the language entirely out of context. The question in *Zacchini* was whether the plaintiff's right of publicity claim under Ohio common law was barred by the First Amendment. 433 U.S. at 565-66. The Ohio Supreme Court held that it was, but the U.S. Supreme Court reversed. *Id.* In doing so, the Court chided the Ohio Supreme Court for relying on *Time, Inc. v. Hill*, 385 U.S. 374 (1967), which had involved a claim under New York Civil Rights Law Sections 50 and 51. *See* 433 U.S. at 570-71. *Hill*, the Court stressed, "involved *an entirely different tort* from the 'right of publicity' recognized by the Ohio Supreme Court." *Id.* at 571 (emphasis added). "The differences between these two torts," the Court continued, "are important. . . . The interest protected in permitting recovery [under the New York Civil Rights Law] is clearly that of reputation, with the same overtones of mental distress as in defamation. *By contrast*, the State's interest in permitting a 'right of publicity' is in protecting the proprietary interest of the individual in his act in part to encourage such entertainment." *Id.* at 573 (emphasis added) (cleaned up). It was with respect to the latter category of claims that the Supreme Court then observed that "the State's interest is closely analogous to the goals of patent and copyright law, focusing on the right of the individual to reap the reward of his endeavors and having little to do with protecting feelings or reputation." *Id.* If anything, therefore, *Zacchini* undermines Ratermann's argument because it reaffirms that claims under Sections 50 and 51 are "entirely distinct from" common law right of publicity claims and not about property at all.

In short, the Court concludes, as a matter of first impression, that Ratermann's claims under Section 50 and 51 do not fall within the intellectual property exception to Section 230. It

follows that Amazon, Walmart, and Ulta are entitled to immunity under Section 230, and

Ratermann's Section 50 and 51 claims against them must be and are dismissed.

### 2. Failure to State a Claim (Walgreens, Pierre Fabre, and QuickFrame)

Walgreens, Pierre Fabre, and QuickFrame advance three other arguments for dismissal of

Ratermann's Section 50 and 51 claims.  First, Walgreens contends that Ratermann does not

plausibly allege that it used her image within the state of New York, as required to state a claim

under Sections 50 and 51.  ECF No. 78 ("Walgreens Mem."), at 3-5;[6] *see also, e.g.*, *Electra v. 59*

*Murray Ents., Inc.*, 987 F.3d 233, 249 (2d Cir. 2021) (noting that the elements of a claim under

Sections 50 and 51 include usage of plaintiff's name, portrait, picture, or voice "within the state

of New York").  Ratermann does not directly respond to this argument in her opposition and,

thus, has arguably abandoned the claim.  *See, e.g.*, *Malik v. City of New York*, 841 F. App'x 281,

283-84 (2d Cir. 2021) (summary order); *accord DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,

323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018) (collecting cases).  But in any event, Walgreens's

argument is well taken.  The Complaint contains only one specific allegation about Walgreens's

use of Ratermann's likeness: that it appeared in a brick-and-mortar store in California.

Walgreens Mem. 4; *see also* TAC Ex. A, at 14.  As for New York, Ratermann says only that,

upon information and belief, Walgreens operates stores in this District and used her likeness in

those stores.  TAC ¶ 23.  Ratermann, however, "cannot merely plop 'upon information and

belief' in front of a conclusory allegation and thereby render it non-conclusory."  *Citizens United*

*v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018).  Instead, she must base her belief "on factual

information that makes the inference of culpability plausible," and her allegations must be

---

[6]     Citations to page numbers in ECF No. 78 are to the page numbers automatically
generated by the Court's Electronic Case Filing system.

"accompanied by a statement of facts upon which the belief is founded." *Wilson v. Veritas Consulting Grp.*, No. 21-CV-8318 (JPO), 2022 WL 4227145, at *2 (S.D.N.Y. Sept. 13, 2022); *see also Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Ratermann's single allegation that Walgreens must have used her image in stores in this District because it operates stores in this District does not meet that standard; instead, it is an impermissible "naked assertion[] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Accordingly, Ratermann's Sections 50 and 51 claim against Walgreens must be and is dismissed.

Second, QuickFrame argues that Ratermann's Section 50 and 51 claim against it fails because, among other things, she does not plausibly allege that QuickFrame even used her likeness (beyond Instagram, as to which the license applied). *See* QuickFrame Mem. 10-11. Once again, the point is well taken. Ratermann alleges, first, that she licensed QuickFrame to use her likeness on Instagram and, second, that her image was used elsewhere without authorization. But she fails to allege, except in conclusory fashion, that QuickFrame itself was involved in any of the impermissible uses of her likeness. *Tesfay v. HanesBrands, Inc.*, No. 19-CV-3889 (GHW), 2019 WL 6879179 (S.D.N.Y. Dec. 17, 2019), involving nearly identical facts, is instructive. There, as here, a model licensed the defendant to use her image for a particular purpose, but later found her image on other companies' websites. *Id.* at *2-3. The court dismissed the plaintiff's Section 51 claims against the defendant because she failed to allege that the *defendant*, as opposed to the other companies, used her image without authorization. *Id.* at *7. The court concluded that the plain meaning of "use" does not include use by someone other than the named defendant. *Id.* So too here. Ratermann includes no allegations that *QuickFrame* used her images in a manner proscribed by Sections 50 and 51. Her allegations that her likeness

was exploited "by Defendants, and each of them," TAC ¶ 16, and that QuickFrame "had

knowledge that it would authorize or allow third parties to exploit her likeness outside of the

scope of the license," *id.* ¶ 58, are entirely conclusory and fail to nudge her claim across the

plausibility threshold.  Thus, Ratermann's claim against QuickFrame must be and is also

dismissed.[7]

      Finally, Pierre Fabre argues that Ratermann's Section 50 and 51 claim should be

dismissed because she fails to allege that it acted with knowledge.  Joint Defs.' Mem. 8-9.[8]

Pierre Fabre is certainly correct in contending that Ratermann's Complaint contains no non-

conclusory allegations regarding its knowledge.  She merely asserts, with no factual basis, that

each Defendant "knowingly used" her likeness and that each Defendant's conduct was "willful,

reckless, and/or with knowledge that such uses of Ratermann's . . . likeness were forbidden or

unlawful."  TAC ¶¶ 29, 32; *see also* Pl.'s Joint Opp'n 4-5.  But knowledge is not an element of a

claim under Sections 50 and 51, except to the extent that a plaintiff seeks exemplary damages.

*Compare, e.g.*, *Electra*, 987 F.3d at 249 ("To establish liability under Section 51, a plaintiff must

demonstrate each of four elements: (i) usage of plaintiff's name, portrait, picture, or voice, (ii)

within the state of New York, (iii) for purposes of advertising or trade, (iv) without plaintiff's

written consent." (internal quotation marks omitted)), *with* N.Y. Civil Rights Law § 51 ("[I]f the

defendant shall have *knowingly* used such person's . . . picture . . . the jury, in its discretion, may

award exemplary damages." (emphasis added)).  Thus, Ratermann's Section 50 and 51 claim

---

[7]     In light of that conclusion, the Court need not and does not reach QuickFrame's argument
that Ratermann's claim should be dismissed as untimely.  *See* QuickFrame Mem. 7-10.

[8]     Pierre Fabre also argues that the claim should be dismissed as untimely.  But Pierre Fabre
raised the issue for the first time in its reply, *see* Joint Defs.' Reply 6-7, and so the Court will not
consider the argument here, *see, e.g.*, *Am. Infertility of N.Y., P.C. v. CNY Fertility, PLLC*, No.
21-CV-5566 (JMF), 2021 WL 4803539, at *1 (S.D.N.Y. Oct. 13, 2021).

against Pierre Fabre is dismissed to the extent that it seeks exemplary damages, *see* TAC ¶ 32, but otherwise survives.

### C. Unfair Competition (Pierre Fabre)

Next, Ratermann brings a claim under New York common law for unfair competition against Pierre Fabre, arguing that its unauthorized use of her likeness was likely to mislead consumers and was done in bad faith. TAC ¶¶ 40-47; *see also* ECF No. 90. "The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (cleaned up); *accord Sly Magazine, LLC v. Weider Publ'ns L.L.C*, 346 F. App'x 721, 723 (2d Cir. 2009) (summary order). A plaintiff states a plausible claim if he or she alleges specific facts showing that the defendant knew it did not have the right to use the plaintiff's likeness for trade purposes and continued to do so anyway. *Allstate Life Ins. Co. v. Mota*, No. 21-CV-908 (LJL), 2021 WL 5166819, at *5 (S.D.N.Y. Nov. 5, 2021); *Passelaigue v. Getty Images (US), Inc.*, No. 16-CV-1362 (VSB), 2018 WL 1156011, at *9 (S.D.N.Y. Mar. 1, 2018). Ratermann's Complaint fails to do so. Indeed, it includes no allegations that Pierre Fabre even knew about the limited nature of her license with QuickFrame. Ratermann thus fails to allege that Pierre Fabre knowingly exceeded the scope of that license. Accordingly, Ratermann's unfair competition claim against Pierre Fabre must be and is also dismissed.

### D. The Lanham Act (Pierre Fabre)

Ratermann brings a similar claim, for "false endorsement," under Section 43(a) of the Lanham Act against Pierre Fabre. TAC ¶¶ 33-39; *see also* ECF No. 90. The elements of a "false endorsement" claim under Section 43(a) are "that the defendant, (1) in commerce, (2) made a

false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services." *Roberts v. Bliss*, 229 F. Supp. 3d 240, 248 (S.D.N.Y. 2017).  Thus, a false endorsement claim "may involve the misleading implication that a celebrity or public figure endorses a product, when she does not." *Id.*  at 249; *accord A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 204 (S.D.N.Y. 2015); *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 626 (S.D.N.Y. 1985).  Significantly, however, a plaintiff states such a false endorsement claim only if the plaintiff did not, in fact, endorse the good or service at issue.  *See, e.g.*, *Pinder v. S. DiCarlo, Inc.*, No. 18-CV-296, 2020 WL 437000, at *4 (N.D.N.Y. Jan. 28, 2020) (holding that the plaintiffs plausibly alleged a false endorsement claim because they "never endorsed" the defendants' club); *Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 244 (S.D.N.Y. 2019) (analyzing whether certain social media posts implied that the plaintiffs endorsed the defendants because the plaintiffs had not, in fact, endorsed them).  "Where a plaintiff *did*, in fact, grant their sponsorship or approval, a false endorsement claim under § 43(a) cannot succeed." *Shabazz v. ICWU Ctr. for Worker Health & Safety Educ.*, No. 18-CV-339, 2021 WL 6197402, at *9 (S.D. Ohio Dec. 30, 2021).

In light of these principles, Ratermann's Lanham Act claim fails as a matter of law. Ratermann concedes that she endorsed Pierre Fabre's Avène products.  *See, e.g.*, Pl.'s Joint Opp'n 12.  Indeed, she expressly permitted her photo to be used for that purpose on Instagram. Thus, it is neither false nor misleading to say that Ratermann endorsed the Avène products.  This case is therefore unlike the cases Ratermann cites to the contrary, in which the plaintiffs had never endorsed the products at issue at all.  *See* Pl.'s Joint Opp'n 11-13; *see also, e.g.*, *Bondar v. LASplash Cosms.*, No. 12-CV-1417 (SAS), 2012 WL 6150859, at *2, 7 (denying the defendants'

motion to dismiss the plaintiff's false endorsement claim where the plaintiff alleges that she never agreed to be "the face" of the defendant company, and specifically never agreed to endorse certain new products).  Put simply, Ratermann agreed to endorse Pierre Fabre's products on Instagram, and she makes no allegation that Pierre Fabre used her likeness to advertise other products that she had not agreed to endorse.  Pierre Fabre may have exceeded the scope of Ratermann's license with QuickFrame, but that alone does not support a false endorsement claim under Section 43(a) of the Lanham Act.  Accordingly, Ratermann's Lanham Act false endorsement claim against Pierre Fabre must be and is dismissed.

### E.  Breach of Contract (QuickFrame)

Ratermann brings a breach of contract claim against QuickFrame for using her likeness beyond the scope of the limited license.  TAC ¶¶ 48-54.  To state a claim for breach of contract, a plaintiff must allege "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *see also, e.g.*, *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). QuickFrame contests two prongs: whether there was an agreement and whether Ratermann can claim damages.  QuickFrame Mem. 16.  But its arguments fall short at the motion-to-dismiss stage.

The first argument is based on the fact that the license attached to the Complaint was modified — to strike a sentence providing that Ratermann waived her right to "additional royalties or other compensation arising out of, or related to, the use of the photograph" — yet signed only by Ratermann.  QuickFrame Mem. 16-17; *see also* ECF No. 69-1.[9]  Discovery may

---

[9]     QuickFrame also makes the argument, albeit only in passing, that it was not even party to the contract; instead, its agent, DMB USA LLC, provided an "exemplary" contract to Ratermann, which QuickFrame did not intend for Ratermann to sign.  QuickFrame Mem. 1, 17-

ultimately reveal that the parties did not enter a binding contract (or that the terms included the stricken language).  But assuming the truth of the allegations in the Complaint and drawing all reasonable inferences in Ratermann's favor, as the Court must, the Court cannot dismiss the claim on that basis at this stage of the litigation.  For one thing, the Complaint expressly alleges that the parties agreed to the license.  *See* TAC ¶ 15.  For another, the existence of an agreement can be inferred from the parties' conduct, even if the writing is unclear or signed by only one side.  *See, e.g.*, *Minelli Constr. Co., Inc. v. Volmar Constr., Inc.*, 917 N.Y.S.2d 687, 689 (App. Div. 2011) (affirming summary judgment finding that the defendant had accepted the plaintiff's offer, and formed a binding contract, through "acquiescent conduct"); *Flores v. Lower E. Side Serv. Ctr., Inc.*, 4 N.Y.3d 363, 369 (2005) ("[A]n unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound.").  And here, although the agreement as modified is not countersigned by QuickFrame, the parties' alleged conduct suggests the formation of a contract.  Specifically, Ratermann alleges that QuickFrame used her likeness to advertise on Instagram, as contemplated by the license.  TAC ¶ 16.  Thus, QuickFrame's first argument does not justify dismissal.

Nor does its second.  QuickFrame contends that Ratermann waived her right to additional royalties in the license.  QuickFrame Mem. 17-18.  But that contention rests on a disputed proposition — namely, that the purported modification of the license (the language allegedly stricken unilaterally by Ratermann) is ineffective — and requires discovery.  Moreover, even if the stricken language is part of the parties' agreement, it is not clear that "additional royalties" and "other compensation arising out of, or related to, the use of the photograph" would include

---

18. This argument is easily rejected.  There is nothing in the Complaint or the license itself indicating that DMB provided the contract to Ratermann (or that, in doing so, it did not bind QuickFrame) or that QuickFrame did not intend for Ratermann to sign it.

damages from a *breach* of the license agreement.  That is all the more so because "contract provisions aimed at relieving a party from the consequences of his own fault are not viewed with favor by the courts" and, thus, are construed "strictly against the party seeking exemption from liability."  *Port Chester Elec. Constr. Corp. v. HBE Corp.*, 894 F.2d 47, 48 (2d Cir. 1990).  Here, QuickFrame seeks an exemption from liability.  Accordingly, the language at issue must be construed against it.  In short, although discovery may reveal that the parties' agreement includes the stricken language and that that language encompasses damages for breach of contract, *see Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 211 (S.D.N.Y. 2020), the Court cannot, right now, dismiss Ratermann's contract claim on that basis.

## F.  Fraud (QuickFrame)

Finally, Ratermann brings a claim for fraud against QuickFrame, alleging that it fraudulently induced her to enter into a license agreement knowing that it intended to exploit her likeness and/or allow third parties to exploit her likeness beyond the scope of the license.  TAC ¶¶ 55-61.  To survive a motion to dismiss, a fraud claim must meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  To satisfy that standard, a complaint must "allege facts that give rise to a strong inference of fraudulent intent."  *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).  That is, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d

273, 290 (2d Cir. 2006).  Failure to satisfy the Rule 9(b) standard warrants dismissal.  *See,*

*e.g.*, *id.* at 293; *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Ratermann's Complaint does not come close to meeting this heightened pleading

standard.  Ratermann alleges only (1) that "QuickFrame . . . represented to [her] that her likeness

would be used on Instagram only, and [that she] relied on that representation when entering into

the license," TAC ¶ 56; and (2) that, upon information and belief, "at the time Quickframe

entered into the agreement with [her], Quickframe knew that the . . . representation was false,

and at that time intended to exploit [her] likeness beyond the scope of the license, and/or had

knowledge that it would authorize or allow third parties to exploit her likeness outside of the

scope of the license," *id.* ¶ 58.  Ratermann does not identify who made the allegedly fraudulent

statements (other than to say it was "Quickframe, through its agent DMB USA LLC," *id.* ¶ 56);

nor does she identify the particular dates on which the statements were made or how the

statements were made.  Such sparse allegations are plainly insufficient to satisfy Rule 9(b).  *See,*

*e.g.*, *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 165 (S.D.N.Y.

2020) (dismissing a fraudulent inducement claim for failure to satisfy Rule 9(b)'s requirements

because the plaintiff's "allegations fail[ed] to identify who made the[] statements[,] and when[]

[and] where . . . they were made"); *Schlenger v. Fid. Emp. Servs. Co., LLC*, 785 F. Supp. 2d 317,

352 (S.D.N.Y. 2011) (same where the plaintiff had "fail[ed] to name individuals, identify

detailed statements, or identify particular dates" on which the allegedly fraudulent statements

were made).

In any event, Ratermann's fraud claim must be dismissed for an independent reason: It is

indistinguishable from her breach of contract claim.  The allegation that QuickFrame (or DMB)

made "intentionally-false statements . . . indicating [its] intent to perform under the contract . . .

is not sufficient to support a claim of fraud under New York law." *Bridgestone/Firestone, Inc.,*

*v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 19 (2d Cir. 1996); *see also Ladenburg Thalmann &*

*Co. v. Imaging Diagnostic Sys., Inc.*, 176 F. Supp. 2d 199, 206 (S.D.N.Y. 2001) ("Under New

York law, a fraud claim is precluded where it relates to a breach of contract."). Instead, for the

fraud claim to be independently viable, Ratermann would need to either allege "a legal duty

separate from the duty to perform under the contract, [or] . . . a fraudulent misrepresentation

collateral or extraneous to the contract," or "seek special damages that are caused by the

misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone Inc.*, 98 F.3d

at 20; *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("New York law

specifically recognizes causes of action for fraud in the inducement when the misrepresentation

is collateral to the contract it induced."); *VTech Holdings Ltd. v. Lucent Techs. Inc.*, 172 F. Supp.

2d 435, 440 (S.D.N.Y. 2001) (finding that the plaintiff had sufficiently pled a claim for fraud

independently from its breach of contract claim where the plaintiff alleged that the defendant

made several misrepresentations about contemporaneous facts related to the subject of the

contract). Ratermann does neither, except for asserting in conclusory fashion that the alleged

fraud caused "special damages," TAC ¶ 61, which plainly does not suffice. Accordingly,

Ratermann's fraud claim against QuickFrame must be and is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in part and

DENIED in part. More specifically, all of Ratermann's claims are dismissed except for (1) her

claim under New York Civil Rights Law Sections 50 and 51 against Pierre Fabre; and (2) her

breach of contract claim against QuickFrame.

That leaves the question of whether Ratermann should be granted leave to amend. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). The Court declines to grant leave to amend to cure the defects with respect to Ratermann's Section 50 and 51 claims against Amazon, Walmart, and Ulta; her Lanham Act claim against Pierre Fabre; and her fraud claim against QuickFrame. The defects in those claims are substantive and, thus, any amendment would be futile. *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases). Additionally, Ratermann already amended her complaint three times, *see* ECF Nos. 9, 17, 69, once after Walmart, Amazon, and Ulta all moved to dismiss her Section 50 and 51 claim on Section 230 immunity grounds, *see* ECF No. 48, at 4-5; ECF No. 51, at 5; ECF No. 54, at 6-13, and Walmart further moved to dismiss her fraud claim as duplicative of her breach of contract claim, *see* ECF No. 48, at 8-9.[10] By contrast, the Court grants Ratermann leave to amend with respect to her Section 50 and 51 claim against Walgreens and QuickFrame, and her unfair competition claim against Pierre Fabre. Defendants' earlier motions to dismiss did not address these claims, and the defects with them are not necessarily incurable. Ratermann shall file any Fourth Amended Complaint **within thirty days of the date of this Opinion and Order**.[11] The remaining Defendants shall file an

---

[10]     Ratermann had previously brought contract and fraud claims against Walmart. *See* ECF No. 17, ¶¶ 33-43.

[11]     Whether or not Ratermann seeks to cure the defects in her dismissed claims, she must amend the Complaint to properly invoke this Court's diversity jurisdiction given that her sole federal claim (under the Lanham Act) has been dismissed. At present, the Complaint alleges only Ratermann's residence. TAC ¶ 5. For purposes of diversity jurisdiction, however, "a statement of the parties' residence is insufficient to establish their citizenship." *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996).

answer or otherwise respond within three weeks of that date or the filing of a Fourth Amended

Complaint, whichever is earlier.  By separate Order today, the Court will schedule the next

pretrial conference.

       The Clerk of Court is directed to terminate ECF Nos. 74 and 79 and to terminate

Amazon, Walmart, and Ulta as parties.


       SO ORDERED.

Dated: January 17, 2023
      New York, New York

                             JESSE M. FURMAN
                        United States District Judge