UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
PATTY RATERMANN,                                                       :
                                                                       :
                      Plaintiff,                                   :
                                                                       :      22-CV-325 (JMF)
        -v-                                                           :
                                                                       :      OPINION AND ORDER
QUICKFRAME, INC.,                                                      :
                                                                       :
                      Defendant.                                   :
                                                                       :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In 2020, Plaintiff Patty Ratermann signed a release granting Defendant QuickFrame, Inc. ("QuickFrame") the right to publish photographic images of her in advertisements for its client, Pierre Fabre USA, Inc. ("Pierre Fabre"). The release was limited to publication on Instagram, but Ratermann later discovered that her images were being used on other websites and in physical stores. This lawsuit, raising common-law and statutory claims against QuickFrame and other parties, followed. As a result of earlier motion practice and settlements, there are only two claims that remain: a claim for breach of contract and a claim for violation of Sections 50 and 51 of New York's Civil Rights Law, both against QuickFrame alone. Now pending are cross-motions, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on both claims. *See* ECF Nos. 157 and 162. For the reasons below, the Court concludes that there are disputes of material fact that preclude summary judgment for either side on the contract claim and that Ratermann's Section 50 and 51 claim is time barred. Accordingly, the Court denies Ratermann's motion in full and grants in part and denies in part QuickFrame's motion.

## FACTS

The following facts are, unless otherwise noted, drawn from the undisputed material facts in the record. *See, e.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

In June of 2020, QuickFrame signed a contract with Pierre Fabre pursuant to which Pierre Fabre agreed to pay QuickFrame $79,400 for fifty-six images that Pierre Fabre could use in advertisements for two of its subsidiary brands, Avène and Glytone. ECF No. 164-1 ("QuickFrame-Pierre Fabre Contract"), at 1. Under the agreement, Pierre Fabre was entitled to "usage rights . . . in perpetuity . . . across all digital media" for some of the images and usage in "brick & mortar" stores for others. *Id.* To complete the project, QuickFrame contracted with a production company, DMB, to conduct a photoshoot. ECF No. 60 ("Tuc Decl."), at ¶ 8. QuickFrame provided DMB with a release agreement delineating usage rights for any photographs DMB took and asked it to ensure that "all talent" signed the agreement. ECF No. 164-4, at 6. DMB then recruited models for the photoshoot through a platform called SwipeCast. ECF No. 164-5, at 12. The shoot took place on July 9, 2020. Tuc Decl. ¶ 9.

Ratermann was one of the models booked through SwipeCast. ECF No. 161-12, at 2. Significantly, her account of what happened next differs slightly from QuickFrame's. In a declaration, Ratermann claims that a QuickFrame "representative" was at the photoshoot, showed her a copy of a "Release Agreement," and gave her "approval" to "cross out [a] line" from the agreement that "waived [her] right to additional royalties for the use of [her] photograph." ECF No. 165 ("Ratermann Decl."), ¶ 8. A representative of QuickFrame disputes these claims, attesting that it "would be extremely rare for anyone from QuickFrame" to attend a photoshoot, let alone to do so in July 2020 given the COVID-19 protocols in effect then, and that he has "never heard about anyone from QuickFrame ever attending" a photoshoot. Tuc Decl. ¶ 10. The parties agree, however, that Ratermann did not sign any release at the photoshoot.

Instead, a few days after the photoshoot, DMB emailed Ratermann a "QuickFrame, Inc. Photography Release Form" (the "Release Form"). ECF No. 161-10 ("Release") (capitalization altered); *see* ECF No. 161-8, at 3. As relevant here, the Release Form — which provided a signature line for Ratermann only — "authorize[d] Quickframe" to "publish" the relevant "photography on Instagram" and stipulated that "[t]he rights . . . [being] granted to QuickFrame" were a "single license for Instagram only." Release. The release also stated that "[n]o modification, amendment, supplement to or waiver of any provision of this release shall be binding upon the parties hereto unless made in writing and duly signed by the parties." *Id.* That line notwithstanding, Ratermann returned a signed copy of the release, but with one line — stating that she "waive[d] any right to additional royalties or other compensation arising out of, or related to, the use of the photograph" — crossed out. *Id.* Ratermann claims that this is the line that she had earlier been given permission to omit. *See* Ratermann Decl. ¶ 9. Ratermann was paid "$800, $680 after deductions, for this job," which, she alleges, she accepted only because she understood her photograph would be used once on Instagram. *Id.* ¶ 10.

Per the terms of the QuickFrame-Pierre Fabre Contract, QuickFrame was to provide Pierre Fabre with the photographs by July 31, 2020. QuickFrame-Pierre Fabre Contract 2. The summary judgment record does not appear to include the date on which QuickFrame transmitted the photographs to Pierre Fabre, but it is undisputed that it was before January 12, 2021.[1] In August 2021, a friend informed Ratermann that her images were being used in advertising in a Walgreens store in California. Ratermann Decl. ¶ 12; *see also* ECF No. 161-11, at 2. Ratermann then reported the "usage issue" to SwipeCast. *See* ECF No. 161-11, at 2. Thereafter, she

---

[1] Documents elsewhere in the record appear to confirm that, by at least December 2020, Pierre Fabre had used Ratermann's images in advertisements on the Avène website. *See* ECF No. 80-2, at 2.

3

discovered that, "[w]ithout [her] knowledge or consent, QuickFrame and its client," Pierre Fabre, had "used multiple different photographs of [her] in hundreds of advertisements, product listings, and social media posts across the internet including but not limited to on Amazon.com, Walmart.com, Aveneusa.com, and Facebook promoting Avene products." Ratermann Decl. ¶ 11; *see also id.* ¶ 13.

Five months later, on January 12, 2022, Ratermann filed this lawsuit against QuickFrame and eight other Defendants. ECF No. 1. Motion practice winnowed Ratermann's claims down to just two: a claim under Sections 50 and 51 of New York's Civil Rights Law, against QuickFrame and Pierre Fabre, and a breach-of-contract claim, against QuickFrame alone. *See Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657 (S.D.N.Y. 2023) ("*Ratermann I*") (ECF No. 98); *Ratermann v. Pierre Fabre USA, Inc.*, No. 22-CV-325 (JMF), 2023 WL 7627425 (S.D.N.Y. Nov. 14, 2023) ("*Ratermann II*") (ECF No. 132). A few months later, Ratermann voluntarily dismissed her remaining claim against Pierre Fabre, *see* ECF No. 149, leaving only the two claims against QuickFrame that are the subject of the present motions.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial,

4

the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When, as here, both sides move for summary judgment, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

## DISCUSSION

As noted, Ratermann and Quickframe cross move for summary judgment on both claims. The Court will address them in turn, beginning with the breach-of-contract claim.

**A. Breach of Contract**

The gravamen of Ratermann's contract claim is that QuickFrame breached the parties' agreement, limited as it was to a "single license for Instagram only," by selling to Pierre Fabre the "virtually unlimited and perpetual right to exploit Ratermann's image in advertising across the internet and in physical stores." ECF No. 163 ("Pl.'s SJ Mem."), at 6. The Court need not dwell long on this claim because there are plainly genuine disputes of material fact that preclude summary judgment for either party. First, there is a dispute over whether the parties formed a contract, either explicitly or implicitly, given the fact that the Release Form was executed only by one party (Ratermann) and the parties disagree about whether Ratermann struck the line about "additional royalties" and "other compensation" with QuickFrame's knowledge and consent. *See, e.g.*, *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006) ("Whether there has been a meeting of the minds on all essential terms is a question of fact that must be resolved by analyzing the totality of the circumstances."); *see also, e.g.*, *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 365 (S.D.N.Y. 2016) ("The existence of an implied contract [is] ordinarily [] a question of fact." (internal quotation marks omitted)). Second, if the parties formed a contract at all, there is a dispute over its terms — most notably, whether it included the stricken line about "additional royalties" and "other compensation arising out of, or related to, the use of the photograph."[2] And third, even if that line was part of the parties' contract, the summary judgment record does not reveal whether "'additional royalties' and 'other compensation arising out of, or related to, the use of the

---

[2] QuickFrame relies on the provision of the Release Form requiring that any modifications be "made in writing and duly signed by the parties" to argue that the parties' contract included the stricken line. ECF No. 170 ("QuickFrame Opp'n/Reply"), at 24. But that would not be the case if the parties agreed to strike the line in the first instance; in that case, the striking of the line would not constitute a "modification" or "amendment" of the contract.

6

photograph' would include damages from a *breach*" of the parties' contract itself. *Ratermann I*, 651 F. Supp. 3d at 674.[3]

In short, there are one or more disputes of material fact and, thus, the parties' cross motions for summary judgment as to the contract claim must be and are denied.

## B. New York Civil Rights Law Sections 50 and 51

Sections 50 and 51 of New York's Civil Rights Law, taken together, provide a right of action against any person or corporation that uses, "for advertising purposes, or for the purposes of trade, the name, portrait [or] picture . . . of any living person without having first obtained the written consent of such person." N.Y. Civ. Rights Law § 50; *see id.* § 51. Ratermann brought separate claims under these provisions against Pierre Fabre and QuickFrame. The gravamen of her (likely settled and now dismissed) claim against Pierre Fabre is that it used her picture for advertising purposes without her authorization. *See* ECF No. 104, at ¶ 38. The gravamen of her claim against QuickFrame is different, as she does not allege the QuickFrame itself used her picture in advertising; instead, Ratermann's claim against QuickFrame is based on the contention that it used her picture "for the purposes of trade" when it transferred or sold her picture to Pierre Fabre without limiting the use of her picture to Instagram and, by exceeding the scope of the license in the Release Form, did so without her consent. *See id.* ¶ 33; Pl.'s SJ Mem. 8.

---

[3] QuickFrame makes an additional argument — for the first time in its opposition/reply — that Ratermann has "not provided sufficient information regarding her damages and as such is precluded from relying on further evidence for her damages." QuickFrame Opp'n/Reply 27. Even if this argument is not forfeited, *see, e.g.*, *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 97 n.12 (2d Cir. 2007), it is unpersuasive. Ratermann has "create[d] a genuine dispute of material fact as to the *existence* of damages attributable to the alleged breach," *New York City Transit Auth. v. Express Scripts, Inc.*, No. 19-CV-5196 (JMF), 2022 WL 3577426, at *3 (S.D.N.Y. Aug. 19, 2022), by providing evidence of her previous modeling contracts providing for broader usage rights and for which she was paid substantially more, *see* ECF No. 165-1. That is all that is required to defeat summary judgment.

Contrary to QuickFrame's contentions, *see* QuickFrame Opp'n/Reply 16, that species of claim fits comfortably within the scope of Sections 50 and 51 as they have been interpreted in this Circuit. *See, e.g.*, *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 250 (2d Cir. 2021); *Passelaigue v. Getty Images (US), Inc.*, No. 16-CV-1362 (VSB), 2018 WL 1156011, at *5-7 (S.D.N.Y. Mar. 1, 2018). In *Electra*, for example, the Second Circuit recognized that Sections 50 and 51 allow challenges to "the sale or transfer of an image . . . to a third party" where, as Ratermann alleges here, that "use or transfer" exceeds the scope of the plaintiff's consent. 987 F.3d at 250 (citing cases). And in *Passelaigue*, Judge Broderick permitted a claim under Sections 50 and 51 to proceed where, as here, the plaintiff, a model, alleged that the defendants had sold the rights to use photographs of her taken at a photoshoot without her consent. "Plaintiff," Judge Broderick explained, "alleges that the sale of images was not in fact 'for use in a manner lawful under' Section 51 by virtue of the fact she did not knowingly authorize their use, and she has also adequately alleged that Defendants' sale of the images themselves was 'for purposes of advertising or trade.'" 2018 WL 1156011, at *6. So too here.

That said, Ratermann's claim is time barred. An action under Sections 50 and 51 "must be brought within one year of the claim's accrual." *Wilson v. Veritas Consulting Grp. Inc.*, No. 21-CV-8318 (JPO), 2022 WL 4227145, at *3 (S.D.N.Y. Sept. 13, 2022) (internal quotation marks omitted). In the case of QuickFrame, Ratermann's claim accrued no later than when QuickFrame sold or transferred her picture without (or beyond the scope of) her consent — namely, when it transferred the images to Pierre Fabre pursuant to a contract that allowed for broader usage than Ratermann had authorized. As noted, the summary judgment record appears to be silent as to what that date was, but it is undisputed that it was more than a year before this lawsuit was filed and likely before July 31, 2020, when QuickFrame was contractually obligated to provide the images to Pierre Fabre. *See* QuickFrame-Pierre Fabre Contract 2; *see also* ECF

8

No. 164-2, at 89-90 (describing a series of transfers that resulted in Pierre Fabre acquiring the photos); ECF No. 164-4, at 9 (July 16, 2020 email from QuickFrame to DMB noting that "final payment" would be processed because "the large part of the work [was] done").  It follows that the one-year limitations period had run when Ratermann sued.

Ratermann's arguments to the contrary fall short.  First, she makes a few arguments for why the statute of limitations should be understood to have begun running later, all based on the premise that her images were "republished."  *See, e.g.*, ECF No. 172 ("Pl.'s Reply Mem."), at 5.  Ultimately, however, none of these points are persuasive.  True, Section 51's "limitations period is refreshed if an item is republished."  *Pearce v. Manhattan Ensemble Theater, Inc.*, 2009 WL 3152127, at *8 n.7 (S.D.N.Y. Sept. 30, 2009) (internal quotation marks omitted).  And it appears that Pierre Fabre continued to use Ratermann's image even after this suit was filed.  *See* Pl.'s SJ Mem. 14.  But *QuickFrame's* liability under Sections 50 and 51 is not tied to *Pierre Fabre's* publication and republication, for which Ratermann attempted — and, through a likely settlement, may have succeeded, *see* ECF No. 149  — to independently hold Pierre Fabre liable.  Instead, QuickFrame's liability, if any, is based on its own sale of the rights to her image.  That sale occurred only one time and more than a year before Ratermann filed suit.

Ratermann tries to avoid this conclusion by pointing to exceptions under which liability can attach for a violation of Sections 50 and 51 based on republication by a third party, but none apply here.  First, a defendant "is not responsible for [the] voluntary and unjustifiable repetition" of the violation, "without his authority or request, by others over whom he has no control."  *Geraci v. Probst*, 938 N.E.2d 917, 921 (N.Y. 2010).  And Ratermann does not establish that QuickFrame had any "authority or control" over Pierre Fabre such that QuickFrame would necessarily by liable for Pierre Fabre's violations.  *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 351 (S.D.N.Y. 1998).  Second, Ratermann points out that courts have said a defendant can be

9

liable for republication if it "approved or ratified" the republication, Pl.'s Reply Mem 5, but she exaggerates the scope of this exception. Ratermann's argument implies that a general grant of rights that simply allows for republication — without specifically "ratifying" any particular future use — is enough for liability to attach with any republication. But even where a transfer of rights renders future republication "foreseeable," that is not enough to extend a non-publishing third party's liability. *See, e.g.*, *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1096 (S.D.N.Y. 1984) (rejecting a "foreseeability" standard for republication by third party).

Finally, Ratermann argues it would be "only logical" for the limitations period to be tied to Pierre Fabre's publication because "Ratermann could not possibly know of the unlawful sale until the resulting uses were published." Pl.'s SJ Mem. 15. As a matter of policy, there is some force to that argument. In *Nussenzweig v. diCorcia*, 878 N.E.2d 589 (N.Y. 2007), however, New York's highest court expressly rejected any application of a "discovery" rule to the statute of limitations for Sections 50 and 51. *Id.* at 590. That may seem harsh where, as here, the underlying violation — namely, QuickFrame's sale of the rights to Ratermann's photograph — occurred completely out of public view. But the reasoning of *Nussenzweig*, which focuses entirely on "spar[ing] the courts from litigation of stale claims, and the citizen from being put to his defense after memories[,] . . . witnesses[,] . . . and evidence ha[ve] been lost," appears to admit of no exceptions. *Id.* This Court's task is to "predict how the New York Court of Appeals would resolve th[is] state law question," *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005), and *Nussezweig* strongly suggests that it would not do so in Ratermann's favor.

In short, Ratermann's claim under Sections 50 and 51 against QuickFrame is time barred. Accordingly, QuickFrame's motion for summary judgment on that claim must be and is granted, and Ratermann's cross-motion as to that claim must be and is denied.

## CONCLUSION

For the reasons stated above, Ratermann's motion for summary judgment is DENIED in its entirety, and QuickFrame's motion for summary judgment is DENIED as to Ratermann's breach-of-contract claim and GRANTED as to her claim under Sections 50 and 51.

Unless and until the Court orders otherwise, the parties shall submit a proposed Joint Pretrial Order and associated materials (in accordance with Section 5 of the Court's Individual Rules and Practices in Civil Cases, available at https://www.nysd.uscourts.gov/hon-jesse-m-furman) **within forty-five days of the date of this Opinion and Order**.  (The Court will schedule a trial date — or a conference to discuss a trial date — after reviewing the parties' submissions.)  In the meantime, the Court is of the view that the parties should try to settle this case without the need for a trial.  To that end, the Court directs the parties **to confer immediately** about the prospect of settlement and conducting a settlement conference before the assigned Magistrate Judge (or before another third-party mediator).  If the parties agree that a settlement conference would be appropriate, they should promptly advise the Court and, if needed, seek an appropriate referral and extension of the pretrial deadlines.

The Clerk of Court is directed to terminate ECF Nos. 157 and 162.

SO ORDERED.

Dated: December 11, 2024
      New York, New York

                                           JESSE M. FURMAN
                                           United States District Judge